UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PTC, INC.,                        )
                                  )
              Plaintiff,          )    CIVIL ACTION NO.
                                  )    14-14056-DPW
v.                                )
                                  )
CHARTER OAK FIRE INSURANCE        )
COMPANY,                          )
                                  )
              Defendant.          )

MEMORANDUM AND ORDER
August 21, 2015

PTC, Inc. moves for judgment on the pleadings against
Charter Oak Fire Insurance Company in this insurance coverage
action as a way to answer the question whether Charter Oak was
required to defend PTC under the terms of a general liability
policy despite the existence of an intellectual property ("IP")
exclusion in the policy.  I conclude that the exclusion applies
and consequently will enter the judgment adverse to PTC.

**I. BACKGROUND**

**A.   *The Underlying Allegations***

PTC was named as a defendant in *Flextronics Int., Ltd.*, v.
*PTC, Inc.*, Civil Action No. 13-0034, in the Northern District of
California on or about January 3, 2013.  Compl. ¶ 5, Ex. A.[1]

---

[1]   Citations to "Compl." refer to the complaint in this action,
citations to "Flex Compl." refer to allegations in the
underlying Flextronics action.

Flextronics alleged that PTC, which licenses software to
Flextronics, "is engaged in the unauthorized and illegal
practice of accessing, monitoring, obtaining, using, and
transferring confidential and proprietary data and information
. . . from Flextronics' computers without Flextronics' consent
and in violation of the master agreement governing the parties'
relationship."  Flex Compl. ¶ 1, *see also* ¶¶ 25-46.  Flextronics
contended that this was "part of an ongoing scheme to boost
PTC's revenue" by "making knowingly false and/or reckless
accusations of copyright infringement and/or unlicensed use of
PTC software in [an] effort to extort payments from its
customers/licensees," *id.* ¶ 2, and that PTC advanced this scheme
by "conceal[ing] embedded technology in its licensed software
that without notice, permission or authorization, accesses,
monitors, obtains, and transfers confidential and proprietary
data and information from Flextronics' computers and purportedly
enables PTC to, among other things, detect instances of
unlicensed software use."  *Id.* ¶ 3.

Flextronics alleged that PTC's embedded software
inaccurately identified licensed uses of PTC software as
unlicensed use, thereby reporting piracy when there was none.
*Id.* at ¶ 55.  Flextronics' claimed injuries included money and
resources expended by Flextronics in its effort to investigate
PTC's unwarranted allegations that Flextronics was using

2

unauthorized copies of PTC's software, allegations which were themselves based on information collected through the unlawfully embedded technology, and in its efforts to investigate the unauthorized technology. *Id.* ¶ 47-54.

Flextronics asserted claims in six causes of action against PTC: (1) Violation of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act; (2) Violation of Cal. Penal Code § 502, Computer Data Access and Fraud Act; (3) Declaratory Judgment under the Copyright Act, 17 U.S.C. § 106, et seq.; (4) Declaratory Judgment as to Breach of Contract; (5) Trespass to Chattels; and (6) Conversion.  As to Count Three, seeking a declaratory judgment under the Copyright Act, Flextronics contended that "[a]n actual, substantial, live, exigent, and justiciable controversy exists between PTC and Flextronics with respect to whether or not Flextronics has violated the Copyright Act . . ." and that Flextronics sought a declaration that "(a) Flextronics has not infringed upon PTC's U.S. copyrights and (b) Flextronics' use of PTC's Pro/ENGINEER software is consistent with Flextronics' licensing rights under the Enterprise Agreement." *Id.* ¶ 80-82.

As part of PTC's defense, it asserted two counterclaims against Flextronics for (1) Copyright Infringement and (2)

Breach of Contract.[2]   The first counterclaim alleged that Flextronics used PTC's copyrighted software in a manner that constituted copyright infringement under 17 U.S.C. § 501.   Flex Counterclaim ¶¶ 47-51.

**B.   *The Policy Coverage***

Charter Oak had issued a series of general liability policies to PTC that were effective between November 1, 2009, and November 1, 2014.   Compl. ¶15.   The policy from 2009-2010 is attached to the complaint in this matter and the parties agree that the 2009-10 policy is identical in all relevant respects to the policy in effect through 2014.   Compl. ¶ 17, Charter Oak Answer ¶ 17.   The policy states that Charter Oak will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" and imposes the "duty to defend the insured against any 'suit' seeking those damages."   Compl. ¶¶ 18-19.

The policy includes a provision (the "IP exclusion") that excludes coverage for:

> "Personal injury" or "advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation: (1) Copyright . . .

---

[2]   The Answer and Counterclaims were also attached to PTC's complaint in this matter.

Compl. ¶ 23.

PTC tendered the defense of the Flextronics Action to
Charter Oak.  In a letter dated June 6, 2014, Charter Oak
disclaimed coverage and, relying upon the IP exclusion,
refused to defend PTC.  In a subsequent letter on September
3, 2014, Charter Oak reiterated its refusal to defend PTC
in the Flextronics Action, stating that "[t]here is no
requirement in the [IP] exclusion that the infringement or
violation of intellectual property laws be committed by the
policyholder for the Intellectual Property exclusion to be
triggered, but only that it is alleged in the same claim or
suit."  Compl. ¶ 28.

**C.    *The Instant Litigation***

PTC filed this action against Charter Oak in Suffolk
Superior Court on October 9, 2014.  PTC seeks a declaratory
judgment that Charter Oak was obligated to defend PTC in
the Flextronics Action, judgment on a breach of contract
claim awarding actual and consequential damages, with
interest, as a result of Charter Oak's refusal to defend
PTC, and attorneys' fees and costs for prosecution of this
action.  Charter Oak filed a petition for removal of the
case to this court pursuant to 28 U.S.C. § 1446(b) based on
the parties' diversity of citizenship, because PTC is a

citizen of Massachusetts and Charter Oak is a citizen of

Connecticut.  PTC now moves for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure on Count One, seeking a declaratory judgment that

the IP exclusion does not apply here and that Charter Oak

is therefore not excused from its duty to defend PTC in the

Flextronics Action.[3]

## II. ANALYSIS

### A.   *Ripeness of a Motion for Judgment on the Pleadings*

PTC seeks leave for judgment on the pleadings pursuant to

---

[3] Charter Oak's response to PTC's Rule 12(c) motion for judgment
on the pleadings before me suggests a belief that this matter
should be treated as a Rule 56 motion for summary judgment,
looking beyond the pleadings to additional facts.  For example,
Charter Oak notes that PTC tendered the defense of the
Flextronics Action on May 9, 2014, fifteen months after the
inception of the lawsuit and a month before the case settled.
Charter Oak also notes that a year before giving notice to
Charter Oak, PTC had tendered the defense of the Flextronics
Action to its error and omissions insurer, ACE American
Insurance Company and had obtained confirmation on March 28,
2014 that ACE would provide PTC with a defense to the
Flextronics Action.  Charter Oak supports these allegations with
an affidavit, Melo Aff., Doc. No. 11-2.  Those factual
contentions, however, are irrelevant to the motion for judgment
on the pleadings as to the applicability of the intellectual
property exclusion.  In addition, as discussed below, treating
the motion before me as a motion for judgment on the pleadings,
I must disregard all evidence extrinsic to the pleadings
themselves.  Charter Oak includes a large amount of additional
extrinsic evidence, including evidence of the high cost of IP
litigation and the historical development of IP exclusions in
general liability insurance.  These facts, which are not
included on the face of the pleadings, may not be considered on
a motion for judgment on the pleadings.

Rule 12(c) solely on the issue of the scope of the IP exclusion and whether Charter Oak was relieved of its duty to defend under the insurance policy's IP exclusion.  A motion for judgment on the pleadings may be filed after the pleadings are closed, Fed. R. Civ. P. 12(c), but is otherwise treated similarly to a Rule 12(b)(6) motion to dismiss, *Simmons* v. *Galvin*, 575 F.3d 24, 30 (1st Cir. 2009).  To survive a Rule 12(c) motion, a complaint must contain factual allegations that, if assumed to be true, "raise a right to relief above the speculative level." *Id.* (quoting *Pérez-Acevedo* v. *Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)).

Charter Oak objects that PTC's claims rely on facts not contained in the underlying pleadings, but does not identify any facts that are outside the pleadings or the documents attached to PTC's complaint, which include the pleadings from the Flextronics action and the insurance policy.  Charter Oak argues that, if anything, I must consider the motion as a Rule 56 motion for summary judgment, but that summary judgment is premature because disputes of material fact remain.  The disputes identified by Charter Oak concern delayed notice of the suit provided to Charter Oak, the distinction between offensive and defensive efforts, and which fees have been covered by another insurer.

Those questions, however, reach beyond the scope of the motion for judgment on the pleadings before me, which is narrowly tailored to provide an adjudication of the meaning of the IP exclusion in the insurance policy and its applicability to the allegations in the pleadings of the Flextronics Action. "The interpretation of an exclusion in an insurance contract presents a question of law." *Finn* v. *National Union Fire Ins. Pittsburgh*, 896 N.E.2d 1272, 1275 (Mass. 2008). While an insurer may consider limited facts outside the pleadings, *see Billings* v. *Commerce Ins. Co.*, 936 N.E.2d 408, 414 (Mass. 2010), no such facts have been identified by either party as bearing on the applicability of the IP exclusion to the Flextronics Action. Factual disputes alluded to by Charter Oak would have no bearing on the question of the applicability of the IP exclusion itself. The purely legal issue of the scope of the IP exclusion and whether it applies in this case is ripe for determination on the pleadings,[4] and in making that determination I disregard allusions to factual matters by either party that are outside of the pleadings themselves.

## B.   *Construction of Insurance Contracts*

The duty of insurers to defend claims is a broad one.  "It

---

[4]  With the exception of possible factual development necessary on the question of compulsory counterclaims, discussed *infra* Section E.

is axiomatic that an insurance company's duty to defend is
broader than its duty to indemnify." *Boston Symphony Orchestra,*
*Inc.* v. *Commercial Union Ins Co.*, 545 N.E.2d 1156, 1158 (Mass.
1989); *see also Open Software Foundation, Inc.* v. *U.S. Fidelity*
*and Guar. Co.*, 307 F.3d 11, 14 (1st Cir. 2002).  Interpretations
of insurance contracts are guided by three fundamental
principles:

> (1) an insurance contract, like other contracts, is to
> be construed according to the fair and reasonable
> meaning of its words; (2) exclusionary clauses must be
> strictly construed against the insurer so as not to
> defeat any intended coverage or diminish the
> protection purchased by the insured; and (3) doubts
> created by any ambiguous words or provisions are to be
> resolved against the insurer.

*Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 568 N.E.2d 631, 635
(Mass. App. Ct. 1991) (internal citations omitted); *see also*
*U.S. Liab. Ins. Co.* v. *Benchmark Const. Servs., Inc.*, 2015 WL
4747164, at *2 (1st Cir. Aug. 12, 2015)(applying Massachusetts
law).  Attempts to restrict insurance coverage through
exclusions must be done in "clear and unmistakable" language,
and where an exclusion is stated with inadequate clarity,
language is construed in favor of the insured.  *Liquor Liability*
*Joint Underwriting Ass'n of Mass.* v. *Hermitage Ins. Co.*, 644
N.E.2d 964, 968 (Mass. 1995).

However, where the language is clear and unambiguous, the
language must be given its plain meaning.  Words in exclusionary

clauses are to be "construed in their usual and ordinary sense." *Bagley* v. *Monticello*, 720 N.E.2d 813, 816 (Mass. 1999). Where "terms of an exclusion are 'plain and free from ambiguity . . . we do not, as the [plaintiff] suggests, construe them strictly against the insurer.'" *Id.* at n. 2 (quoting *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 373 N.E.2d 966, 968 (Mass. 1978)). Therefore, "a policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." *Finn*, 896 N.E.2d at 1277 (quoting *Hyfer* v. *Metropolitan Life Ins. Co.*, 61 N.E.2d 3 (Mass. 1945)). Given these rules of construction, the question before me is whether the language of the policy, and specifically the IP exclusion, is ambiguous or unclear about whether it would apply in the Flextronics Action.

## C.   *IP Allegations in the Initial Complaint*

PTC argues that because there is no copyright infringement allegation *against PTC* in the Flextronics complaint, the allegations in the complaint do not fall within the IP exclusion. PTC does not address the fact that paragraphs of allegations related to copyright infringement are woven throughout the Flextronics complaint. Starting with the introduction to the complaint, Flextronics makes clear that PTC's actions unlawfully to access and obtain information from Flextronics' computers without Flextronics' consent was not

10

something that occurred in a vacuum, but rather was something
that occurred in the context of a broader IP dispute.
Flextronics contends that PTC's actions were part of an ongoing
scheme to make false and reckless allegations of copyright
infringement and to extort settlements from licensees.
Flextronics alleges that this scheme was what led PTC to embed
the secret technology in its products and to introduce it into
Flextronics' computers.  *See* Compl. ¶¶ 2, 3, 45.

Flextronics alleges that PTC falsely and recklessly made
copyright infringement allegations against it, based on
information purportedly secured through its embedded technology.
Compl. ¶ 47, 51.[5]  Flextronics contends that, in response to

---

[5] Paragraph 47 of the Amended Complaint in the Flextronics matter
references a communication on or about July 26, 2012, in which
PTC communicated to Flextronics that it believed Flextronics was
using "substantial numbers" of unauthorized copies of PTC's
software.  I inquired of the parties during the hearing on PTC's
motion for judgment on the pleading whether this letter could be
produced and whether the communication was incorporated by
reference in the Flextronics complaint and thereby into the
complaint in this action.  After the hearing, the parties
submitted letters about this communication in which it became
clear that the parties did not know which communication was the
foundation for the allegation in paragraph 47 of the Flextronics
Amended Complaint, although counsel for Charter Oak received
information from counsel for Flextronics in the underlying suit
that the communication referenced was actually a letter from
over two months after the date referenced in the complaint.
Given this uncertainty about what communication exactly was
referenced in the complaint and the unfocused passing reference
to this communication, I may not consider its contents beyond
what explicitly is alleged in the complaint because the
communication itself was not attached to the complaint,
expressly incorporated in any clear manner, or sufficiently

learning of possible infringement, it began to undertake an investigation that "cast a wide net" to assess any possible infringement.  *Id.* ¶ 48.  Flextronics' investigation, which initially was focused on responding to the allegations of copyright infringement, ultimately uncovered evidence of the embedded technology.  *Id.* ¶ 52.

Despite the extensive allegations related to the issue of copyright infringement throughout the complaint, Flextronics did not make a direct claim for copyright infringement because there was no allegation that PTC itself infringed a copyright belonging to Flextronics.  Rather, in order to remove the legal uncertainty and threat of litigation presented by PTC, Flextronics sought a declaratory judgment that it had not violated PTC's copyright.

### D.   *Policy Language*

PTC argues that because the language of the policy is silent about whether it applies if the insured did not itself commit the act triggering the exclusion, it is ambiguous and must be construed in favor of coverage.  PTC primarily relies upon two cases for this proposition, both of which concern policies that can be distinguished from the policy here.

---

referred to in the complaint.  *See Watterson* v. *Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).

In *Liquor Liability Joint Underwriting Assoc.* v. *Hermitage Insurance Co.*, 644 N.E.2d 964 (Mass. 1995), the Supreme Judicial Court considered a multi-peril insurance policy covering accidents that result in bodily injury "neither expected nor intended from the point of view of the insured." *Id.* at 966. The policy had an exclusion stating that "[a]ssault and/or battery shall not be deemed an accident under the . . . policy, nothing in the policy to the contrary." *Id.* Consequently, the court was called upon to resolve whether the insurer was required to provide coverage where a patron of the insured sued the insured for negligence after being assaulted by another patron. *Id.* at 966. The SJC held that the insurer had a duty to indemnify the insured because the exclusion could be read in either of two ways, (a) as barring all claims, including negligence claims, related to an assault and battery, or, alternatively, (b) as applying only to assault or battery caused by, or at the direction of, the insured or its agents or employees. *Id.* at 968.

The *Liquor Liability* court contrasted the narrow language of the exclusion in that case with other assault and battery exclusions, noting that other policies "use language stating that *any claim arising out of, or based on, an assault and battery* is excluded from coverage whether committed by or at the direction of the insured or third parties." *Id.* at 967.

The IP exclusion in this case does not restrict itself solely to IP infringement; instead, it extends to personal injury "arising out of any actual or alleged infringement," or any personal injury alleged in a suit that also alleges such infringement.  The language of the IP exclusion before me is significantly broader than that in *Liquor Liability*, and it reiterates the word "any" ("any infringement" and injury in "any claim or suit"), although it does not explicitly state that it applies whether the infringement is committed by the insured or by third parties.

PTC also relies upon *USM Corp.* v. *First State Insurance Co.*, 652 N.E.2d 613 (Mass. 1995), in which the insured agreed to deliver a computer system that would perform to certain specifications.  *Id.* at 614.  The computer was designed by a third-party supplier, which had represented to the insured that the computer would perform as required, and the insured reasonably relied on the advice of the third-party supplier. *Id.*  When the system did not work as promised, the customer sued the insured.  *Id.*  The insurer disclaimed coverage, pointing to an exclusion for any claim "arising out of errors or omissions in the design of any tangible product."  *Id.* at 615.  Despite the fact that the exclusion used the broad "arising out of" language, language also present in the IP exclusion here, the SJC held that the exclusion was ambiguous about whether it

14

excluded a design defect created by a non-insured third party.
*Id.*  PTC argues that in this case as well, the IP exclusion is
silent about whether it applies when an IP violation is
committed by a non-insured.  In *USM*, however, the SJC's decision
was rooted firmly in a discussion of the nature of "errors and
omissions" policies, which are specific to obligations "inherent
in the practice of the insured's profession."  *Id.* at 614-15.
In contrast to the general liability insurance policy at issue
in this case, errors and omissions insurance is geared
specifically to errors and omissions by the insured, and the
court in *USM Corp.* determined that the error or omission by the
insured did not arise out of *its own role* in the design of a
tangible product ("Thus [the insured] can be viewed as having
committed no error in the design of any tangible product"), but
rather it arose out of its role in breaching a warranty through
non-negligent reliance on third-party assurances.  *Id.* at 615.

Charter Oak, for its part, relies upon *Finn* v. *National
Union Fire Ins. Co. of Pittsburgh, PA*, 896 N.E.2d 1272 (Mass.
2008), in which the SJC held that an IP exclusion did apply to
alleged infringement by a third party.  In *Finn*, an error and
omissions policy contained an exclusion for "any claim arising
out of any misappropriation of trade secret or . . . any other
intellectual property right." *Id.* at 1274.  A client sued the
insured because a nephew of an employee of the insured gained

access to and disclosed proprietary information. *Id.* at 1276. The insured argued that the exclusion did not apply because the infringement was by a third party, but the SJC held the exclusion applicable because the plain language of the exclusion precluded coverage. *Id.* at 1278. The court held that "[t]he phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law." *Id.* (quoting *Bagley* 720 N.E.2d at 816). The *Finn* court also held that "[t]he breadth of the phrase 'arising out of,' in conjunction with the words 'any claim,' unambiguously encompasses claims based on third-party conduct. The expansiveness of the phrase 'any claim arising out of' obviates the need to specify that the exclusion applies 'whether committed by or at the direction of the insured or third parties.'" *Id.* (quoting *Liquor Liability*, 644 N.E.2d at 967).

Of the three cases pressed by the parties, *Finn* is most closely on point regarding the question whether an exclusion can be based on conduct of a party other than the insured. The language of the IP exclusion here is significantly broader than that in *Liquor Liability*, and the general insurance policy at issue here is interpreted through a different lens than the errors and omissions policy in *USM Corp*. The court in *Finn* held that the language of the exclusion in that case was sufficiently unambiguous to encompass claims based on third-party conduct.

16

The challenge in this case is that the language of the IP exclusion in the Charter Oak policy here is not identical to that in *Finn*.

The language of the IP exclusion in the Charter Oak policy refers to personal injury arising out of any actual or alleged infringement and to any other personal injury alleged in any claim or suit that also alleges any such infringement or violation.  The Charter Oak exclusion does not have the precise language "any claim arising out of," which was the language in *Finn*.  While the *Finn* court approved the specific language in that case, there is an indication that the court believed that the precise formulation was not necessary.  The *Finn* court approvingly cited language in cases from around the country referring to "injury arising out of" rather than "any claim arising out of," which the court held was in accord with its position in *Finn*.  *Id.* at n. 10 (finding unambiguous third-party liability in numerous cases with language including "liability arising out of" or "injury arising out of").

Other courts similarly have held the phrase "arising out of," even divorced from the language "any claim," to be extremely broad, *see, e.g. Brazas Sporting Arms, Inc*. v. *American Empire Surplus Lines Ins*. *Co.*, 220 F.3d 1,7 (1st Cir. 2000) (discussing various interpretations of the phrase, and noting that "arising out of" "is generally understood to mean

17

'originating from,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with.'").

Finding close parallels in the IP exclusion language here to the policy at issue in *Finn* and cases on which *Finn* relies, I conclude that the language of "personal injury . . . arising out of any actual or alleged infringement or violation" sufficiently expansive unambiguously to include personal injury arising out of alleged infringement by a third party, here Flextronics.  The connection between the personal injury alleged and the allegation of IP infringement need not be an actual claim for IP infringement, so long as the alleged injury has some causal nexus to an alleged dispute over copyright infringement.  I conclude that Flextronics' allegations about PTC's copyright-related scheme are within the plain language, personal injury "arising out of alleged infringement," of the IP exclusion.[6]

---

[6] In its reply, PTC cites *Utica Ins. Co.* v. *Impallaria*, 892 F.2d 1107 (1st Cir. 1989), claiming that this case stands for the proposition that a policy exclusion may only look to the claim against the insured.  In fact, *Utica* concerns the meaning of the phrase "claim . . . for premiums."  In that case, the question was whether an insurer had to defend an insured who was an insurance agent in a suit for damages that were equal to the amount of premiums that should have been paid but for the insured insurance agent's errors and omissions.  The question was whether a claim for damages based on the premium that should have been paid is the same as a claim for premiums.  The court in *Utica* noted that the fact that the losses were based on the amount of the premium that was not provided does not make the loss the same as a premium.  *Id.* 1113.  Utica does not stand for the proposition that an insurance exclusion may only look to the allegations against an insured, and I do not find *Utica*

The second part of the IP exclusion, excluding any other
personal injury alleged in any claim or suit that also alleges
any such infringement or violation, similarly reaches any suit
that includes any allegations of IP infringement or violations
in the suit.  This portion of the exclusion does not require
that the allegation of IP infringement be directly against the
insured, but rather that the allegation be present in the claim
or suit involving the insured.  The phrase "such infringement"
references back to the first part of the IP exclusion, focusing
on injury arising from alleged infringement.  Flextronics'
complaint plainly includes allegations regarding copyright
infringement, specifically allegations of false and reckless
accusations of copyright infringement.  While Flextronics'
allegations may even more accurately be understood as
"allegations of allegations of copyright infringement," the
broad language of the Charter Oak IP exclusion encompasses such
allegations as well.

## E.    IP Allegations in the Counterclaims

PTC presents the Flextronics Action as one in which the
initial complaint had no relevant IP allegations, with the IP
allegations only coming into play through PTC's counterclaim
against Flextronics alleging copyright infringement.  In

---

helpful to my analysis here.

reality, as discussed above, the initial complaint contained extensive allegations related to copyright infringement. PTC claims shock and surprise that the IP exclusion had "magically sprung back into effect" through PTC's counterclaim, but the counterclaim is actually very closely related to the underlying complaint. The counterclaim asserted the inverse of Flextronics' claim for a declaratory judgment that it had not infringed PTC's copyright, and did not introduce any new issues into the case that were not already being litigated based on the face of the complaint itself.

The counterclaim asserted by PTC is indisputably an allegation of copyright infringement. Having determined above that the IP exclusion unambiguously reaches allegations of copyright infringement by a party other than the insured, I note that the counterclaim seems plainly to be within the language of the IP exclusion — it is an allegation of copyright infringement against Flextronics, and it is alleged in the same suit as the Flextronics allegations. Nonetheless, I decline to reach the question whether the counterclaim alone would have sufficed to invoke the IP exclusion because I find this issue to be inadequately briefed by the parties, potentially subject to further factual development, and ultimately unnecessary to my holding in this case given my determination that the IP

exclusion applies based on the allegations in the initial complaint.

The unsettled legal and potential factual issue concerns the duty of an insurer to defend counterclaims at all.  Despite the otherwise clear language of the IP exclusion, if an insurer has no duty to defend a counterclaim such as the one asserted by PTC against Flextronics, then the rationale of basing an IP exclusion on an allegation that would not lead to any extra expense for the insurer disappears.  Charter Oak argued in its opposition that it needed to conduct discovery on the question of "which fees relate to the insured's offensive efforts and so are not costs of defense," suggesting that it believes that the costs of prosecuting the counterclaims would not be the responsibility of the insurer.

The status of counterclaims in the context of an insurer's duty to defend is unsettled.  Typically, an insurer has no "duty to defend" an affirmative claim by an insured.  *See, e.g., Barletta Heavy Div., Inc.* v. *Travelers Ins. Co.*, 2013 WL 5797612 at *10 (D. Mass. Oct. 25, 2013)("Like the Massachusetts Superior Court, I am unaware of any decision in which a court has extended an insurer's duty to defend to encompass offensive suits undertaken voluntarily.")  Under Massachusetts law, if an insurer has a duty to defend any aspect of a litigation, it is "in for one, in for all," meaning that it must defend all other

21

claims within the litigation.  *See GMAC Mortg., LLC* v. *First American Title Ins. Co.*, 985 N.E.2d 823, 827 (Mass. 2013).  It remains an open question whether the "in for one, in for all" approach applies to matters raised solely in compulsory counterclaims.  *See id.* (noting that a title insurer may have a duty to defend compulsory counterclaims against the insured in the particular context of title insurers); *Mount Vernon Fire Ins. Co.* v. *VisionAid, Inc.*, 2015 WL 1038012, *5-6 (D. Mass. March 10, 2015), *appeal docketed,* No. 15-1351 (1st Cir. Mar. 26, 2015)(holding that "an insurer ought not to bear any obligation to prosecute affirmative counterclaims asserted by the insured," but leaving open the question whether a counterclaim "inextricably intertwined with the defense" would be covered by an insurer's duty to defend).  The copyright counterclaim asserted by PTC appears to be a compulsory counterclaim under Fed. R. Civ. P. 13(a) which provides that "[a] pleading must state as a counterclaim any claim that . . . the pleader has against an opposing party if the claim (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." However, neither the question of compulsory counterclaims nor whether the duty to defend extends to counterclaims generally was briefed by the parties.

22

Instead, PTC cites cases stating that the duty to defend is
assessed based on the fit between the policy and complaint.
*See, e.g.*, *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 788
N.E.2d 522, 530 (Mass. 2003).  The cases cited by PTC do not
directly address the status of answers or counterclaims.
Charter Oak counters by citing a case that broadens the sources
to be consulted for determining a duty to defend, noting that
insurers can look to both "the facts alleged in the complaint,
and on facts known or readily knowable by the insurer that may
aid in its interpretation of the allegations in the complaint."
*Billings* v. *Commerce Ins. Co.*, 936 N.E.2d 408, 414 (Mass. 2010)
(also noting another exception where there is "an undisputed
extrinsic fact that takes the case outside the coverage and that
will not be litigated at the trial of the underlying action").
These cases alone do not resolve the question whether a
counterclaim can trigger a broadly-worded IP exclusion.

Given that a determination of this issue is ultimately
unnecessary to resolution of this case and what I believe to be
undeveloped legal and potential factual issues concerning an
insurer's obligation to pay for the prosecution of
counterclaims, I will refrain from resolving the question
whether the IP exclusion can be triggered by a compulsory
counterclaim alone.

23

**F.    Insured's Reasonable Expectations**

PTC argues that, even if the IP exclusion "technically" does apply in this case, it would be improper to interpret the exclusion in a way that would defeat an insured's reasonable expectation.  PTC cites *Western Alliance Ins. Co.* v. *Gill*, 686 N.E.2d 997 (Mass. 1997) for the principle that the "objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Id.* at 121, n.7 (quoting R.E. Keeton, *Insurance Law* § 6.3(A) at 351 (1971)).

The court in *Gill* focused primarily on the insured's expectations, but the essential adverb — *objectively* reasonable expectations — signifies expectations rooted in the language of the policy.  While a doctrine of reasonable expectations may have some force when looking at the language of a policy itself, once a policy exclusion is determined to be clear and unambiguous, it has no role to play.  *See Finn*, 896 N.E.2d at 1278-79 ("We need not consider [the insured's] reasonable expectations as the plain language of the intellectual property exclusion unambiguously precludes coverage . . . The application of the reasonable expectations doctrine is typically limited to cases in which the policy is ambiguous and the mutual intent of the parties cannot be determined.")(internal quotation marks and

citations omitted).  *See also U.S. Liab. Ins. Co.*, 2015 WL
4747164, at *3("an insured can have no reasonable expectation of
coverage if the unambiguous terms of the policy preclude
coverage").  Having determined above that the language of the IP
exclusion clearly and unambiguously covers the allegations in
the Flextronics Action, PTC's expectations have no further role
to play in this analysis.

### III. CONCLUSION

For the reasons set forth more fully above, it is hereby
ORDERED that Plaintiff's Motion for Judgment on the Pleadings
(Doc. No. 8) is DENIED.  Although Charter Oak has not itself
moved for dismissal, PTC acknowledges "[i]f the Court rules that
the IP Exclusion applies, the case is over."  Having resolved
that the IP exclusion does apply to the Flextronics Action, I
direct the clerk to enter a judgment for the defendant declaring
that the exclusion does apply.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE